Christopher K. Johnston (CABN 261474)
(*pro hac vice* application forthcoming)
David B. Owen Jiménez (USDC-PR-301113)
**JOHNSTON LAW GROUP**
1510 Ave. F.D. Roosevelt, Ste. 6A1, Guaynabo, PR 00968
Tel: (844) 345-3784; Fax: (844) 644-1230
kyle@masstortslaw.com; david@masstortslaw.com

Anthony G. Buzbee (TXBN 24001820)
Peter K. Taaffe (TXBN 24003029)
(*pro hac vice* applications forthcoming)
**THE BUZBEE LAW FIRM**
600 Travis Street, Ste. 7300, Houston, TX 77002
Tel: (713) 223-5393; Fax: (713) 223-5909
tbuzbee@txattorneys.com; ptaaffe@txattorneys.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOHN DOE and JANE DOE, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation; STARWOOD HOTELS & RESORTS WORLDWIDE, LLC, a Maryland limited liability company; STARWOOD HOTELS & RESORTS MANAGEMENT COMPANY, LLC, a Delaware limited liability company; BAHIA BEACH CH DEVELOPMENT, LLC, a Puerto Rico limited liability company; BBP PARTNERS, LLC, a Puerto Rico limited liability company; INTERLINK GROUP, a Puerto Rico limited liability company; MUÑOZ HOLDINGS, INC., a Puerto Rico corporation; PAULSON & CO. INC., a Delaware corporation; and ROES 1 through 100, inclusive,<br><br>Defendants. | CIVIL NO. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>(1)  NEGLIGENCE<br>(2)  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS<br>(3)  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>(4)  INVASION OF PRIVACY<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW,** Plaintiffs Jane Doe and John Doe ("Plaintiffs"), individually and as representatives of the class defined herein, bring this class action for damages and final injunctive relief against Defendants MARIOTT INTERNATIONAL, INC., a Delaware corporation;

STARWOOD HOTELS & RESORTS WORLDWIDE, LLC, a Maryland limited liability company; STARWOOD HOTELS & RESORTS MANAGEMENT COMPANY, LLC, a Delaware limited liability company; BAHIA BEACH CH DEVELOPMENT, LLC, a Puerto Rico limited liability company; BBP PARTNERS, LLC, a limited liability company; INTERLINK GROUP, a Puerto Rico limited liability company; MUÑOZ HOLDINGS, INC., a Puerto Rico corporation; PAULSON & CO., INC., a Delaware corporation; and ROES 1 through 100, inclusive (collectively, "Defendants"), and hereby state, allege and pray as follows:

## I.  <u>INTRODUCTION</u>

1.  St. Regis Hotels & Resorts is a luxury hotel chain that was founded over a century ago by John Jacob Astor IV in New York City.  The St. Regis brand has become the leading luxury lifestyle hospitality brand by selecting exclusive properties around the world and advertising an uncompromising level of bespoke and anticipatory service for all its guests.

2.  The St. Regis Bahia Beach Resort (the "St. Regis Bahia") is an intimate hotel set on 483 acres in a gold-certified Audubon Signature Sanctuary in Rio Grande, Puerto Rico and has 139 luxuriously appointed guest rooms and suites.  The St. Regis Bahia boasts a Five Diamond rating by AAA and a Five Star rating by Forbes Travel Guide.

3.  Plaintiffs did not experience the quality and service that travelers have come to expect from the St. Regis brand during their stay at the St. Regis Bahia.  Instead, Plaintiffs allege they were subjected to a gross violation of their privacy as members of the hotel staff secretly watched and/or recorded them undressing and sharing intimate moments in their "luxurious" suite.

4.  Plaintiffs bring this class action individually and on behalf of all similarly situated citizens of the United States, including men, women and children who stayed in the same suite as Plaintiffs or any other voyeuristic room at the St. Regis Bahia that allowed hotel staff to secretly watch and/or record them in private.

5.  Plaintiffs, individually and on behalf of the members of the class defined herein, seek Fifty Million Dollars ($50,000,000) in damages and injunctive relief based on the causes of action set forth in this class action.

## II.  JURISDICTION AND VENUE

6.  This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2)(A) because Defendants, through the wrongful conduct and gross privacy violations alleged herein, have caused substantial harm to Plaintiffs and potentially hundreds or thousands of others similarly situated who comprise the proposed class, and when aggregated, their claims far exceed $5,000,000, exclusive of interest and costs, and Plaintiffs, together with most members of the proposed Class, are citizens of states different from Defendants.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all the events or omissions giving rise to the claims in this class action occurred in this Judicial District.

## III.  THE PARTIES

8.  Plaintiff JOHN DOE ("John Doe") is an individual and a resident of the State of Florida.  John Doe is a successful businessman and former Division I collegiate athlete.

9.  Plaintiff JANE DOE ("Jane Doe") is an individual and a resident of the State of Florida.  Jane Doe is a real estate agent.

10.  John Doe and Jane Doe were high school sweethearts.  They are married have several beautiful children together, including two teenagers.

11.  The allegations described herein involve a sex crime that was committed against Plaintiffs in the privacy of their hotel room, and as such, Plaintiffs are identified by pseudonyms to prevent details of their bodies and sex interests from becoming public.

12.  Defendant MARRIOTT INTERNATIONAL, INC. ("Marriott") is a Delaware corporation, with its principal place of business at 10400 Fernwood Road, Bethesda, Maryland, 20817.  Marriott has designated Corporate Creations Network, Inc. as its agent for service of process and can be served at 3411 Silverside Road, Tatnall Building, Ste. 104, Wilmington, Delaware, 19810.

13.  Defendant STARWOOD HOTELS & RESORTS WORLDWIDE, LLC ("Starwood Worldwide") is a Maryland limited liability company with its principal

place of business at 10400 Fernwood Road, Bethesda, Maryland, 20817. Starwood Worldwide has designated Corporate Creations Network, Inc. as its agent for service of process and can be served at 2 Wisconsin Circle, Ste. 700, Chevy Chase, Maryland, 20815.

14.     Defendant STARWOOD HOTELS & RESORTS MANAGEMENT COMPANY, LLC ("Starwood Management") is a Delaware limited liability company with its principal place of business at 10400 Fernwood Road, Bethesda, Maryland, 20817. Starwood Management has designated the Corporation Trust Company as its agent for service of process and can be served at 1209 Orange Street, Wilmington, Delaware, 19801.

15.     Defendant BAHIA BEACH CH DEVELOPMENT, LLC ("Bahia Development") is a Puerto Rico limited liability company with its principal place of business and registered address for service of process at 7000 Bahía Beach Boulevard, Rio Grande, Puerto Rico, 00745.

16.     Defendant BBP PARTNERS, LLC ("BBP Partners") is a Puerto Rico limited liability company with its principal place of business at 7000 Bahía Beach Boulevard, Rio Grande, Puerto Rico, 00745. BBP Partners has designated the Federico F. Sánchez-Febles as its agent for service of process and can be served at Villas de San Francisco, 89 De Diego Avenue, Suite 201, San Juan, Puerto Rico, 00927.

17.     Defendant INTERLINK GROUP, LLC ("Interlink") is a Puerto Rico limited liability company with its principal place of business at Villas de San Francisco, 89 De Diego Avenue, Suite 201, San Juan, Puerto Rico, 00927. BBP Partners has designated the Federico J. Sánchez Ortiz as its agent for service of process and can be served at Villas de San Francisco, 89 De Diego Avenue, Suite 201, San Juan, Puerto Rico, 00927.

18.     Defendant MUÑOZ HOLDINGS, INC. ("Muñoz") is a Puerto Rico corporation with its principal place of business at Cornoa Comercial Park, Building 1, Suite 601, San Juan, Puerto Rico, 00909. Muñoz has designated Antonio Muñoz as its agent for service of process and can be served at Corona Comercial Park, Piso 6, Progreso 54, Santurce, Puerto Rico, 00907.

19.     Defendant PAULSON & CO., INC. ("Paulson") is a Delaware corporation with its principal place of business at 1251 Avenue of the Americas, 50th Floor, New York, New York, 10020.  Paulson has designated Corporation Service Company as its agent for service of process and can be served at 251 Little Falls Drive, Wilmington, Delaware, 19808.

20.     Defendants ROES 1 through 100 ("Roes"), inclusive, are individuals, corporations, or entities who are unknown to Plaintiffs, and therefore Plaintiffs sue them under fictitious names.

21.     All the named defendants are jointly and severally responsible to Plaintiffs and members of the class as defined herein for the damages set forth in this class action. All defendants fictitiously named herein, will be correctly amended once their identities have been determined.

## IV.  FACTUAL ALLEGATIONS

22.     Starwood Worldwide is a hotel chain that was acquired by Marriott in September 2016 for approximately $13 billion.  Marriott is the largest hotel chain in the world.

23.     Starwood Worldwide is the owner of the "St. Regis" trademark and has licensed it to be used at the St. Regis Bahia.

24.     Upon information and belief, at all times relevant hereto, Starwood Management provides hotel management services to the St. Regis Bahia under a long-term management agreement.

25.     Upon information and belief, at all times relevant hereto, Bahia Development owned, controlled, maintained, managed, supervised and/or was otherwise responsible for the operations of the St. Regis Bahia, including the safety of hotel patrons and the selection, hiring, training, and supervision of the hotel's employees.

26.     Upon information and belief, at all times relevant hereto, BBP Partners owned, controlled, maintained, managed, supervised and/or was otherwise responsible for the operations of the St. Regis Bahia, including the safety of hotel patrons and the selection, hiring, training, and supervision of the hotel's employees.

27.     Interlink is an experienced real estate development company that has developed numerous resort communities in Puerto Rico.

28.     Muñoz is a leading real estate management company in Puerto Rico.  Muñoz manages more than 1.3 million square feet of offices, warehouses, shopping centers and parking facilities in Puerto Rico.

29.     Upon information and belief, Interlink and Muñoz are founding members of BBP Partners.  Paulson, through entities that it controls, acquired a majority interest in BBP Partners in or about September 2013.

30.     In mid-2016, Plaintiffs decided to plan a trip to Puerto Rico to experience the beauty and culture of the island.  Plaintiffs were particularly interested in Puerto Rico because John Doe was considering relocating his business to the island, which would have resulted in substantial tax savings.  Plaintiffs invited several other couples to join them on their vacation, and they did.

31.     After researching hotels online, Plaintiffs decided to book an ocean front suite at the exclusive and private St. Regis Bahia.

32.     On November 10, 2016, Plaintiffs arrived at the St. Regis Bahia and checked into one of the hotel's "luxurious" ocean-front suites on the ground level in Building 3. Plaintiffs believe their suite number was 312.

33.     Building 3 at the St. Regis Bahia is the farthest guest-occupied building to the west of the hotel property and borders a wooded area.

34.     Building 3 is more secluded and, at least in theory, offers guests more privacy than the other hotel buildings because of its location.

35.     It makes sense for the hotel to place guests who demand extraordinary privacy, such as actors, athletes, politicians, etc., in one of the suites in Building 3.  In fact, the most luxurious and expensive suite at the St. Regis Bahia is the Governor's Suite. It is 2,510 square feet and takes up the entire second floor of Building 3.

36.     Both Plaintiffs' suite and the Governor's Suite had an exterior wall facing the wooded area to the west.  In Plaintiffs' suite, the exterior wall was in the bedroom and featured two exterior windows covered by bamboo blinds.

37.     The friends who accompanied Plaintiffs on the vacation checked into separate rooms in a different building.

38.     Upon their arrival and after checking into their suite, Plaintiffs decided to get ready for bed and get a good night's sleep.  They were exhausted after a long day of travel.

39.     Jane Doe took a shower first, then John Doe.

40.     Jane Doe laid in bed reading a book as John Doe took a shower.  In doing so, Jane Doe noticed that the bamboo blind covering one of the exterior windows in the bedroom was damaged and missing a section of bamboo.  Jane Doe was worried light would shine through the blind the next morning so she filled the missing section of bamboo with tissue paper.

41.     Jane Doe failed to mention the damaged blind to John Doe when he joined her in bed, and he did not otherwise notice it.  Once in bed, they went to sleep.

42.     The next morning, on November 11, 2016, Plaintiffs had breakfast and then spent most of the day hanging out with their friends on the beach.  Plaintiffs returned to their suite late that afternoon to get ready for dinner at Fern, the hotel's highly acclaimed restaurant.

43.     Upon returning to their suite, Plaintiffs found a bottle of champagne with a hand-written note from the hotel staff that encouraged Plaintiffs to "have fun" that night.  Plaintiffs did not order or otherwise request a bottle of champagne to be delivered to their suite.

44.     Plaintiffs had sex in their bedroom shortly after returning from the beach, and then started getting ready for dinner.

45.     Jane Doe was in the shower and John Doe was getting dressed in their bedroom when there was a knock at the front door.  Before he could respond or otherwise answer the door, two male "engineering" employees from the hotel unlocked the front door and walked into their suite.  John Doe was startled by the intrusion and asked the employees to leave.  The employees responded that it was an urgent matter that would only take a few minutes.

46.     John Doe ultimately acquiesced and one of the employees walked into the bedroom to "fix something" that was allegedly wrong with the wall near the desk.  At the same time, the other employee was asking questions of and talking to John Doe to keep his attention focused away from the bedroom.  It took less than a few minutes for the employee to fix whatever needed to be fixed in the bedroom.

47.     John Doe told Jane Doe about the hotel employees after she got out of the shower.  The desk where the employee was "working" was in front of the damaged bamboo

blind that Jane Doe had previously stuffed with tissue paper.  Jane Doe immediately noticed that the tissue paper was missing.  She recalled seeing it still in place after returning from the beach that afternoon and no one had been in their bedroom since then except for the "engineering" employee.

48.     Alarmed and concerned, John Doe and Jane Doe searched their entire suite and noticed that another bedroom window facing the wooded area to the west was also covered with a bamboo blind that had a similar section of bamboo missing.  The following is a picture of one of the blinds in Plaintiffs' bedroom with the missing section of bamboo:



[Remainder of Page Left Blank.]

49.     Both bamboo blinds covered bedroom windows that faced the wooded area to the
west, and the blinds had privacy liners behind them to further prevent light from
coming into the room.  Upon closer inspection, Plaintiffs noticed both privacy liners
had been cut in the same locations as the missing sections of bamboo, allowing
hotel employees a direct view into their bedroom.  The following are pictures of
the privacy liners that covered the exterior windows in Plaintiffs' bedroom:





50.     Plaintiffs believe the privacy liners remained strategically attached so that the liner
could be taped closed, if needed.

51.     Plaintiffs continued to search their suite and found that the exterior window in their
bathroom had a section of privacy tint missing that allowed anyone peering through

the window from the outside to see directly into the shower and bathroom area.

52.     It was obvious to Plaintiffs that they had been watched and/or recorded by hotel staff, possibly while getting undressed, taking a shower, and even having sex.

53.     Plaintiffs now believe the bottle of champagne that was delivered to their room earlier that day was to encourage them to get drunk and ensure a better "show" that night.

54.     After uncovering the extent of the voyeurism, Plaintiffs immediately requested that the hotel manager speak with them privately in their room about an important issue.

55.     A female hotel manager met Plaintiffs at their suite and observed all the peeping areas in the bedroom and bathroom.  Plaintiffs and the hotel manager also walked outside and observed chairs and beer cans against the exterior wall near the bedroom windows.  The following are pictures of the bedroom windows that clearly show the holes in the privacy liner:





56.     Plaintiffs and the hotel manager also observed a section of the privacy tint in the

bathroom window had been peeled up and taped too remain up.  Plaintiffs believe

the tint remained strategically attached, similar to the privacy liners in the bedroom,

so the tint could be put back in place, if needed.  The following is a close-up picture

of the privacy tint that was peeled up to allow a clear view into the shower and

bathroom area:



57.     Plaintiffs asked the hotel manager to report the incident to the police since Plaintiffs do not speak Spanish.  Plaintiffs also asked the manager to investigate and identify which employees were involved and fire them so that future guests would not be subjected to the same gross privacy violation as Plaintiffs.  The manager agreed.

58.     In response to what she observed, the hotel manager moved Plaintiffs to a suite in a different building for the remaining two nights of their stay.  The hotel manager also comped Plaintiffs' hotel charges, which totaled approximately $7,000.

59.     Plaintiffs were never contacted by the police during or after their stay, nor where Plaintiffs contacted by any of the defendants once they returned home to Florida.

60.     Plaintiffs took numerous pictures of the peeping holes, some of which are included herein.  Additionally, Plaintiffs' friends who accompanied them on their vacation witnessed the peeping holes first-hand and were aware of the incident when it happened.

61.     Plaintiffs remain shocked and appalled by how their privacy was violated in such an egregious manner, and that it occurred at a St. Regis branded hotel that was awarded Five Diamonds by AAA.

62.     John Doe's business requires extensive travel, both domestic and international. Following the allegations described herein, John Doe decided not to relocate his business to Puerto Rico and thus was not able to benefit from the tax advantages of doing so.

63.     The allegations described herein caused and continues to cause Plaintiffs great harm.  Plaintiffs now have difficulty travelling for John Doe's business and being intimate in hotel rooms.

## IV.  CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class:  All persons in the United States who stayed at the St. Regis Bahia and were secretly watched and/or recorded in the privacy of their hotel room (the "Class").

65.     It is unknown how long the wrongful conduct took place or how many rooms were targeted, but the number of members of the proposed class could easily number in the hundreds.

66.    As an illustration of the numerosity of the potential class, assume the following facts: (i) the wrongful conduct alleged herein lasted just two years; (ii) only Plaintiffs' suite was targeted, and not the Governor's Suite or any other room on the property; (iii) the average length of stay during the two years was 4 days; (iv) the average number of guests staying in the room during the two years was 3 guests, and (v) the occupancy rate for the St. Regis Bahia during the two years was 65 percent.  In this example, there would be 355 members in the proposed class, but Plaintiffs believe this number could increase significantly once the true nature and scope of the voyeuristic activities that occurred at the St. Regis Bahia become known.[1]

67.    Plaintiffs reserve the right to redefine the Class prior to certification.

68.    Excluded from the Class are the officers and directors of Defendants, any judge or judicial officer assigned to this matter and his or her immediate family, and any legal representative, successor, or assign of any excluded persons or entities.

69.    This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

70.    The proposed Class is so numerous that joinder is impractical.  The exact number and identities of the Class is unknown to Plaintiffs and can only be ascertained through appropriate discovery.

71.    Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to the following:

(a)    Whether employees of Defendants secretly watched and/or recorded hotel guests in the privacy of their hotel rooms;

(b)    Whether Defendants were negligent in the supervision of employees who worked at the St. Regis Bahia;

---

[1] 365 (days in year) × 2 (no. of years wrongful conduct existed) × 1 (no. of rooms) × 65% (occupancy rate) ÷ 4 (length of stay) × 3 (number of guests) = 355 individuals who would have suffered the same fate as Plaintiffs.

CLASS ACTION COMPLAINT

(c)     Whether Defendants were negligent in protecting the privacy of guests of the St. Regis Bahia;

(d)     Whether Defendants' actions constitute an invasion of privacy;

(e)     Whether Defendants' conduct was intentional; and

(f)     Whether Defendants' are liable to Plaintiffs and the Class for damages, including exemplary damages;

72.     Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct since they were all secretly watched and/or recorded by hotel employees in the privacy of their hotel room at the St. Regis Bahia.

73.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with experience handling complex class litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class.

74.     A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Class.  Each individual Class member may lack the resources to undergo the burden and expense associated with individually prosecuting the complex, expensive, and extensive litigation necessary to establish Defendants' liability and obtain adequate compensation for the injuries sustained.  Individualized litigation increases the expense and delay for all parties and multiplies the burden on the judicial system in handling the complex legal and factual issues present in this case.  Individualized litigation also presents the potential for inconsistent and contradictory judgments.  Conversely, a class action presents far fewer practical difficulties and provides several benefits, including single and efficient adjudication.  Class treatment of the issues present in this case will ensure that each claimant receives a fair and consistent adjudication.

## V.  CAUSES OF ACTION

### A.  NEGLIGENCE
#### (As Against All Defendants)

75.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this class action.

76.    Plaintiffs bring this claim individually and on behalf of the Class.

77.    Defendants, individually, and by and through their agents, employees, servants, and/or independent contractors, owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care and caution in and about the ownership, management, maintenance, supervision, control and operation of the St. Regis Bahia and each of their employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees and persons such as Plaintiffs and the Class.

78.    Defendants breached this duty and were negligent in their acts and/or omissions by, amongst other things, creating, permitting and/or failing to discover alterations to the bedroom and bathroom that facilitated the act of voyeurism and allowed Defendants' agents, employees, servants, and/or independent contractors to secretly watch and/or record of Plaintiffs and the Class in the privacy of their hotel rooms.

79.    Defendants, individually, and by and through their agents, employees, servants, and/or independent contractors, owed a duty to Plaintiffs and the Class to exercise due care in hiring, training, supervising and retaining employees and independent contractors that provided services at the St. Regis Bahia.  Defendants breached this duty by providing such poor and inadequate training and supervision that their agents, employees, servants, and/or independent contractors could secretly watch and/or record of Plaintiffs and the Class in the privacy of their hotel rooms.

80.    Marriott should have taken additional precautions to prevent that type of actions alleged in this class action, especially given that only nine months earlier, in March 2016, a jury awarded sportscaster Erin Andrews $55 million for the unwanted videotaping of her in the privacy of her hotel room.  Instead, Defendants' agents, employees, servants, and/or independent contractors – not just an unrelated, third-party stalker – secretly watched and/or recorded Plaintiffs and the Class in the privacy of their hotel rooms.

81.    As a direct and proximate result of Defendants' negligent acts and/or omissions as alleged herein, Plaintiffs and the Class suffered damages in an amount to be proven at trial.  Plaintiffs, individually and on behalf of the Class, seek all damages allowed by law.

82.    Additionally, Defendants' are liable for Plaintiffs' damages based on the wrongful conduct alleged herein that violates Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 5141 and 5142, which impose an obligation to repair the damage done by any person whose act or omission "causes damage" to another through "negligence or fault."

### B.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (As Against All Defendants)

83.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this class action.

84.    Plaintiffs bring this claim individually and on behalf of the Class.

85.    Defendants, individually, and by and through their agents, employees, servants, and/or independent contractors, owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care and caution in and about the ownership, management, maintenance, supervision, control and operation of the St. Regis Bahia and each of their employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees and persons such as Plaintiffs and the Class.

86.    Defendants breached this duty and were negligent in their acts and/or omissions by, amongst other things, creating, permitting and/or failing to discover alterations to the bedroom and bathroom that facilitated the act of voyeurism and allowed Defendants' agents, employees, servants, and/or independent contractors to secretly watch and/or record of Plaintiffs and the Class in the privacy of their hotel rooms.

87.    Defendants, individually, and by and through their agents, employees, servants, and/or independent contractors, owed a duty to Plaintiffs and the Class to exercise due care in hiring, training, supervising and retaining agents, employees, servants, and/or independent contractors that provided services at the St. Regis Bahia. Defendants breached this duty by providing such poor and inadequate training and supervision that their agents, employees, servants, and/or independent contractors could secretly watch and/or record Plaintiffs and the Class in the privacy of their hotel rooms.

88.     As a direct and proximate result of Defendants' negligent acts and/or omissions as alleged herein, Plaintiffs have suffered and will continue to suffer, and the Class, upon learning of the gross violation of their privacy will suffer, severe emotional distress and embarrassment, in an amount to be proven at trial.   Plaintiffs, individually and on behalf of the Class, seek all damages allowed by law.

## C.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (As Against All Defendants)

89.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this class action.

90.     Plaintiffs bring this claim individually and on behalf of the Class.

91.     Defendants, individually, and by and through their employees, exercised extreme and outrageous conduct as set forth herein by, amongst other things, creating, permitting and/or failing to discover alterations to the bedroom and bathroom that facilitated the act of voyeurism and allowed Defendants' agents, employees, servants, and/or independent contractors to secretly watch and/or record of Plaintiffs and the Class in the privacy of their hotel rooms.

92.     Defendants, individually, and by and through their agents, employees, servants, and/or independent contractors, intended their extreme and outrageous conduct to inflict severe distress or knew that there was a high probability that their conduct would inflict such distress on Plaintiffs and the Class.

93.     As a direct and proximate result of Defendants' intentional acts and/or omissions as alleged herein, Plaintiffs have suffered and will continue to suffer, and the Class, upon learning of the gross violation of their privacy will suffer, severe emotional distress and embarrassment, in an amount to be proven at trial.   Plaintiffs, individually and on behalf of the Class, seek all damages allowed by law.

## D.  INVASION OF PRIVACY
### (As Against All Defendants)

94.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this class action.

95.     Plaintiffs bring this claim individually and on behalf of the Class.

96.    Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico states that the dignity of a human being is inviolable.

97.    Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico states that every person has the right to be protected from abusive attacks against their honor, their reputation, and their private or family life (the "Constitutional Right to Privacy").

98.    A violation of the Constitutional Right to Privacy is only tolerated when health or public security concerns so requires.  Unless it has been waived, the Constitutional Right to Privacy is inviolable, be it by the State, a private entity or any citizen.

99.    The acts and/or omissions of Defendants, individually, and by and through their agents, employees, servants, and/or independent contractors, include, amongst other things, creating, permitting and/or failing to discover alterations to the bedroom and bathroom that facilitated the act of voyeurism and allowed Defendants' agents, employees, servants, and/or independent contractors to secretly watch and/or record of Plaintiffs and the Class in the privacy of their hotel rooms.

100.    The secret watching and/or recording of Plaintiffs and the Class were unauthorized intrusions into their privacy when they had the greatest expectation of privacy. Defendants' actions are objectionable and offensive to any reasonable person, including Plaintiffs and the Class.

101.    As a direct and proximate result of Defendants' acts and/or omissions as alleged herein, which invaded the privacy of Plaintiffs and the Class, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.  Plaintiffs, individually and on behalf of the Class, seek all damages allowed by law.

## VI.  <u>INJUNCTIVE RELIEF</u>

102.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this class action.

103.    Plaintiffs bring this claim individually and on behalf of the Class.

104.    The St. Regis Bahia is currently closed because of extensive damage sustained by Hurricane Maria, but the hotel is scheduled to reopen in early 2018.

105.   Plaintiffs respectfully request that this Court enter a preliminary and permanent injunction that requires Defendants to repair any alterations to the bedroom and bathroom that facilitate the act of voyeurism and allow Defendants' agents, employees, servants, and/or independent contractors to secretly watch and/or record hotel guests in the privacy of their hotel rooms.

106.   If injunctive relief is not granted then future hotel guests that fall within the scope of the Class will suffer irreparable injury and have their privacy violated, and there is no adequate remedy at law for such harm.

107.   The requested injunctive relief will not adversely affect public policy or the public interest.  Rather, the entry of the requested injunctive relief will favorably affect the public interest.

108.   Plaintiffs are willing to post an appropriate bond in support of the requested injunctive relief.

## VII.  DAMAGES

109.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this class action.

110.   Plaintiffs bring this claim individually and on behalf of the Class.

111.   As a direct and proximate result of the Defendants' acts and/or omissions as alleged herein, Plaintiffs have suffered and will continue to suffer, and the Class, upon learning of the gross violation of their privacy will suffer, severe emotional distress, embarrassment, humiliation, indignity and insult, loss of enjoyment of life, medical care expenses, and other incidental consequential and special damages, in an amount to be proven at trial.

112.   Defendants acts and omissions, as set forth herein and incorporated by reference, were done in an intentional, reckless or grossly negligent manner, and/or were malicious, reckless, wanton, and/or oppressive, justifying an award of punitive damages against Defendants for the purpose of punishment and to deter others from the commission of like offenses.

## VIII.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, individually and on behalf of the Class, respectfully pray and demand judgement against Defendants as follows:

(a)     An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing Plaintiffs as Class Representatives; and appointing undersigned counsel as counsel for the Class;

(b)     Economic and compensatory damages of not less than Fifty Million Dollars ($50,000,000);

(c)     Injunctive relief as set forth herein;

(d)     Punitive and exemplary damages;

(e)     Pre-judgment and post-judgment interest at the maximum rate allowable by law;

(f)     Attorneys' fees and costs of litigation;

(g)     Final injunctive relief from this Court as set forth herein (subject to a separate motion and factual finding by this Court); and

(h)     Such other relief available under all applicable state and federal laws and any further relief this Court deems just and appropriate.

## VIV.  DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class, hereby demand a trial by jury.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this 13th day of November 2017.

The undersigned counsel hereby certifies that the instant document has been electronically filed with this Court's CM/ECF System, which will simultaneously serve notice on all counsels of record, to their registered e-mail addresses.

s/ David B. Owen Jiménez
David. B. Owen Jiménez
USDC-PR-301113
**JOHNSTON LAW GROUP**
Tel. (844) 345-3784; Fax: (844) 644-1230
david@masstortslaw.com

*Attorney for Plaintiffs*